James Lyle administrator of James Lyle the elder deceased, who was the surviving partner of Lyle & M’Creedie, presented a petition to the county court of Albemarle, at August term 1821 — shewing, that Robert Miller, a merchant of that county, was indebted to Lyle & M’Creedie, on an unsettled and running account, common among merchants, in the sum of 141 dollars, and died without settling the account, leaving no personal estate to pay the debt, but seized of a parcel of land in Albemarle, which had been regularly escheated to the commonwealth, by office found, *£or want of heirs of the decedent, and had been sold by the escheator, who still held the proceeds of sale in his hands; and, therefore, praying, that Watson, the escheator, should be mude defendant, and should be directed to pay the debt due the petitioner from the decedent, out of the proceeds of sale of the escheated land, according to the statute, 1 Rev. Code, ch. 82, g 14, p. 297.* In the account exhibited with the petition, the debits to Miller consisted of two items for cash paid him on account of bills of exchange, one item for goods sold him, and the other items for cash advanced to or for him; and there was a single credit, for the proceeds of a bill of exchange bought of him. And the first item in the account was dated in October 1803, and the last in August 1806.
At the same term of the county court, Robertson surviving partner of Bridges & Robertson, presented a petition to the court against Watson the escheator; exactly similar to that of Lyle’s administrator, mutatis mutandis; in which he prayed, that the escheator should be directed to pay him a debt of 2837 dollars, being the balance due from Miller to Bridges & Robertson, on an unsettled running- account between them.
*There were two accounts exhibited with the petition, in this case. The first was an account of dealing between Miller and Bridges & Robertson, commencing in July 1811, and ending in September 1814, at which time Miller died; and the credits to Miller consisted of one item for tobacco, and nine items of cash received from him, and the debits consisted of a few items for goods sold him, and numerous items of cash advanced to or for him. In the other account, raised between Miller’s estate after his death and Bridges & Robertson, the first item was dated in October 1814, and the last in August 1816: and in this account, Miller’s estate was charged with the balance due from him in his lifetime, and some other moneys which became due after his death, in consequence of dealings which commenced in his lifetime, and also with all the moneys disbursed for the estate, by Bridges who was Miller’s ad-ministratoras having been in fact disbursed by Bridges & Robertson; and the estate was credited with the moneys received by Bridges, the administrator, for Miller’s estate; shewing the balance of 2837 dollars claimed in the petition, as due Bridges & Robertson. In the first of these accounts, there were seven charges, amounting to more than 1800 dollars, for advances by Bridges & Robertson to take up notes and acceptances of Miller; and, in the last, charges to the amount of 744 dollars, for a note of Miller for 698 dollars, with interest and charges of protest, paid by Bridges & Robertson after Miller’s death.
The escheator pleaded the act of limitations, in both cases, to which the petitioners replied, that the accounts concerned the trade of merchandize between merchant and merchant.
In the case of Lyle’s administrator, there was no evidence to prove, that either Lyle & M’Creedie, or Miller, during the time of the dealings between them, were merchants, and no other evidence of the character of the dealings between these parties, but that which the account furnished. In Robertson’s case, there was proof, that from the year 1803, Miller was engaged, principally, as a merchant *in trade, and that, for some years previous to his death, he was engaged in speculations in the produce of the country, and in the manufacture of cotton cloth; but the only proof that the dealings between these parties, were dealings between them as merchant and merchant, was that furnished by the accounts.
Each of the petitioners verified the allegations of his petition by his own affidavit: each of them, moreover, adduced affidavits *926 of witnesses to prove the justice of his claim.
The evidence of the claim of Lyle’s administrator was quite sufficient.
The evidence of Robertson’s claim consisted of the affidavit of a witness, proving, 1. That the witness had compared the accounts filed by the petitioner with the books of Bridges & Robertson, and found the greater part of them charged in the hand writing of one Scott, a clerk of the house (who had since gone to Scotland, and was reported to be dead), though the witness could not designate which of the items were in Scott’s hand writing; and that a small part in the commencement of the account, was entered on the books in the hand writing of Triplett, another clerk of the house, who was now a resident of Kentucky. 2. That Bridges & Robertson did, within the knowledge of the witness, advance considerable sums of money' for Miller, and that he died indebted to them to a large amount, besides the two notes filed in the cause. 3. That Bridges & Robertson paid one note of Miller, indorsed by them, for 200 dollars, due at the Farmers Barik on the 3rd September 1814. And 4. That Bridges, as Miller’s administrator, after his death, took up another note of Miller for 698 dollars, by giving Bridges & Robertson’s note for the same amount, which was charged to Miller’s estate, in the second account of Bridges & Robertson filed in the cause.
It was proved, that Miller’s personal estate was not sufficient to pay the claims of the petitioners or any part thereof. It appeared, that Miller died about the last of September 1814; and that his land in Albemarle, was regularly escheated *to the commonwealth, by inquest of office found the 9th August 1817.
In .each of the cases, there was a case agreed, and order entered by consent, waiving all irregularities in pleading, and in the manner of taking the evidence, and submitting for the decision of the court, upon the evidence filed in each case,* the following points — 1. Whether there' was sufficient proof, that Miller did not leave sufficient personal estate to pay the debts claimed by the petitioners, respectively, or either of them? 2. Whether there was sufficient proof that the accounts of the petitioners, or either of them, were such accounts as concerned the trade of merchandize between merchant and merchant, within tbe meaning of the statute of limitations, 1 Rev. Code, ch. 128, § 4, p. 488? ‘ ‘there being no other evidence of the nature and character of the claims, respectively, except the face of the accounts, and the affidavits; though the original existence of Robertson’s accounts, as it respected the negotiable notes, was not denied.” 3. Whether, under the circumstances of these cases, the statute of limitations was pleadable in bar of the claims of the petitioners, or of either of them? and 4. Whether upon the whole case, judgment should be given for the petitioners, or either of them, or for the escheator?
The county court adjudged, in the case of Lyle’s administrator, that the escheator should pay him 131 dollars,' with interest thereon from the 1st September 1806, till paid, and his costs, out of the proceeds of Miller’s land, in his hands; and, in Robertson’s case, that the escheator should pay him 2837 dollars, with interest thereon from the 1st September 1816 till paid, and his costs, out of the proceeds of the escheated land, or so much thereof as should remain after satisfying the debt adjudged to Lyle’s administrator. *Ifrom these judgme.nts, Watson the escheator appealed to the circuit court, which affirmed them; and then he appealed to this court.
The causes were argued here by the attorney general for the appellant, and by Taylor for the appellees.
I. The first question was, whether there was proof of Miller’s personal estate being insufficient to pay the debts? But of this there was hardly room to doubt; and the court had no doubt.
II. The next question was, whether the debts claimed by the appellees, respectively, were proved?
There was no doubt, that that claimed by LyTe’s administrator, was proved. But, as to the debt claimed by Robertson, the attorney general said, that (excepting the two notes for 200 dollars and 698 dollars) the evidence was too vague to prove any thing. The witness said that the greater part of the items were entered in the hand writing of one clerk, but instantly contradicted himself by admitting that he could not designate the items entered by him, and. that a small part were entered in the hand writing of another clerk; so that it was impossible to understand which were the items, to which the proof of entry in the hand writing of the clerks, applied.
Taylor answered, that the claim of the creditor was verified by his own affidavit; which was all that the statute in such cases required. Then, there was the affidavit of the witness, the obvious meaning of which was, that all the items were charged in the hand writing of the two clerks, the greater part in that of one, and a small part in that of the other; and when he said, that he could not designate which of the items were charged in the hand writing of Scott, his meaning was, that, though he had examined the books, and found the greater part of the items charged in Scott’s hand writing, yet, not having the books, but only the copy of the accounts filed in the cause, before him, at the time of his affidavit, he could not then designate the items entered by *Scott. There were charges in the two accounts, for notes and acceptances of Miller taken up by Bridges & Robertson, to the amount of more than 2500 dollars; the original existence of which (it was expressly stated in the case agreed) was not denied; and surely this fact, coupled with the other evidence, was enough to^prove a debt to as large an amount as that which the county court adjudged to this creditor. At all events, the claim was proved to the amount of the *927 notes and acceptances; and if the judgment was wrong in giving the whole balance claimed, this court, proceeding to give the judgment which the court below ought to have given, ought to give judgment for the amount that was proved. Besides, the escheator did not contest the original justice of the claim; he rested his defence wholly on the statute of limitations.
The attorney general replied, that the last point submitted to the court by the case agreed (namely, whether judgment ought to be given for the petitioners, or for the defendant) presented the question whether there was sufficient proof of the claim.
III. The third point was, whether these were accounts concerning the trade of merchandize between merchant and merchant, within the meaning of the exceptibn in the statute of limitations?
The attorney general argued, 1st, As to the case of Lyle’s administrator, that it was well settled, that the exception in the statute applies only to open, current accounts, not to stated accounts, or to notes or bills. 2 Wms. Saund. 127, note 6; Ramchander v. Hammond, 2 Johns. Rep. 200. The account of Lyle & M’Creedie was not an open, current account; the debits were very few, and there was only a single credit, and that for the proceeds of a bill of exchange; and the last item was dated as early as 1806. The dealings then ceased, and the account was closed; it was thenceforth, in effect, a stated account; and the statute of limitations began to run. Besides, there is no evidence in the case of Lyle’s administrator, that Miller, the debtor, *was a merchant; nor is there any thing in his dealings with Lyle & M’Creedie at all peculiar to mercantile business. 2ndly, In Robertson’s case, the last account (that raised between Miller’s estate after his death, and Bridges & Robertson) certainly was not an account between merchant and merchant. And in the preceding account, of dealings during Miller’s lifetime, many of the largest debits were charges of notes and acceptances of Miller, taken up by Bridges & Robertson, all of which constituted liquidated demands.
Taylor answered, 1st, That the account on which the claim of Lyle’s administrator was founded, was not the less an open or current account, because the dealings had ceased: the distinction was between open or current accounts and stated accounts: stated accounts were such accounts only as have been, in some way or other, settled between the parties; all other accounts were open or current accounts. It was true there was no evidence filed by Lyle’s administrator, to prove that Miller was a merchant; but the fact was proved by the evidence filed in Robertson’s case; and by the case agreed in Lyle’s case, the evidence in Robertson’s was made evidence in Lyle’s also. Here, then, were dealings between merchants; one party advancing cash to the other, and not buying, but taking, a bill of exchange from him, the proceeds of which when received were to be put to his credit. This transaction was, in its character, peculiarly mercantile. 2ndly, The account of Bridges & Robertson with Miller in his lifetime, was xjlainly an account between merchant and merchant, unless the advances of cash by merchant to merchant in a course of dealing were contrary to the mercantile character of the transaction ; which he thought it impossible to maintain. The charges for Miller’s notes and acceptances, were not for his notes and acceptances to Bridges & Robertson, but for cash advanced by them to take up his notes and acceptances to others. But, he insisted, the act of limitations could, in no view, be a bar to Robertson’s claim. The oldest .item in the x'first account of Bridges & Robertson was dated in 1811; and Miller died in 1814, that is, within five years; so that there was, then, no bar to a claim against Miller’s administrator, and he appropriated Miller’s assets to it. Upon that first account, and upon the second account raised after Miller’s death, no claim could be asserted for payment out of the proceeds of his land, till the land was escheated a> d sold, and the proceeds in the escheator s hands. Therefore, the statute of limitations could not begin to run for the es-cheator, until the escheat, which took place in 1817; and Robertson’s petition was filed within five years after, namely, in 1821. The uniting of the two claims, on the account against Miller in his lifetime, and that against Miller’s estate, was not improper in this case; for the statute, which gave this summary proceeding by petition, directed that the court should proceed to judgment according to the right of the case; a phrase always used in our statutes, to dispense with technical forms.
IV. The attorney general contended, that the escheator might properly avail himself of the statute of limitations in his defence. The statute which gave the remedy against him, directed, in general terms, that he should defend the claims; and thus authorized and required him to make any and every defence which might affect the legal justice of the claims. The escheator, in effect, represented the estate of the deceased debtor; for, notwithstanding the escheat and sale of the land, if any heir of the decedent should afterwards appear within ten years, and prove his right, he would be entitled to the net proceeds of the sale, by the new provision of the statute, enacted in 1819, 1 Rev. Code, ch. 82, § 19, p. 298.
Taylor answered, that the escheator represented the commonwealth, and as the statute of limitations did not run against her, so neither was it an available defence for her. The provision of the statute which gave the remedy against the escheator, was enacted in 1304: Sess. Acts of 1803-4, ch. 77, 'i 3. Before that statute, the creditors of a decedent 'x'whose lands had eschea.ted to the commonwealth, always applied by petition to the legislature, for payment of their debts, out of the proceeds of the escheated lands; and if an heir appeared after the opportunity for asserting his rights at law had gone by, he also applied by petition to the legislature, for the money. They were both applications to the equity of the government. If the creditor proved his debt, it never was heard that *928 the legislature rejected his petition, because he had not come within the time of limitation of actions; and in reference to the possible future claim of an heir, it never was imagined, that he had a better claim on the equity of the government, than a creditor whose claim was just, though it had not been asserted within the statute of limitations. The only object both of the statute of 1803-4, which gave the remedy to the creditor against the escheator, and of the new provision of 1819, which gave the remedy for the heir, if one should appear, was, to provide a judicial remedy, in place of the petition to the legislature; and the intent was, that justice should be administered by the courts upon the same principles on which it had always been administered by the legislature. The legislature never intended, that the escheator might avail himself of the defence of the statute of limitations, to which it had never paid the least respect in its dispensations of equity, in such cases; that the escheator might avail himself of that statute, which the debtor himself might never have chosen to plead. And, he said, the statute of limitations had never been held an available de-fence for any one but the debtor himself or his representatives. Upon this principle, in England, though none but a creditor can sue out a commission of bankruptcy, it was no objection to the commission, that the claim of the petitioning creditor was more than six years old; Quantock &c. v. England, 5 Burr. 2068; Mayor &c. v. Pine, 2 Carr. & Payne, 91, 12 Eng. C. L. R. 41. But if the statute of limitations was an available defence for the escheator, from what time did the statute run in respect to him? Certainly, only from the time when the proceeds of the escheated land *came to his hands, since, until then, the creditors could institute no judicial proceeding. Otherwise, if the escheat was delayed (as was very often the case) for more than five 3rears after the decedent’s death, the remedy of every creditor by simple contract would be barred. The creditors, in the present cases, being simple contract creditors, they had no claim for satisfaction out of their deceased debtor’s land. Their right, as well as their remedy, to get satisfaction out of the land, was given by the statute; and, by the statute, neither the right nor the remedy accrued till the proceeds of the escheated land had been collected by the escheator. Both of the creditors in these cases, resorted to their remedy within five years after the escheat; and, therefore, the defence of the statute of limitations failed as to both.
TUCKER, P.
The claims of the petitioning creditors to have satisfaction out of the proceeds of the escheated lands, are resisted on two grounds — that the debts are not proved; and that the claims are barred by the statute of limitations.
1st, As to Eyle’scase, the court holds that the debt is sufficiently proved; and the only questions in that case are those which arise out of the plea of the statute of limitations. To the defence founded on the statute, two answers have been given: 1. that the es-cheator as representing the commonwealth, cannot plead the statute; and 2. that the account is between merchant and merchant, and not within the bar of the statute.
In deciding the first of these questions^ I do not think it necessary to examine, generally, whether the commonwealth is within the statute of limitations. I incline to think she is not. But, in this case, the statute has constituted the escheator the defendant in the action, and has directed that he shall defend the suit. That defence is not against a claim exhibited against the commonwealth, but against the estate of a decedent, escheated to the state, which the liberal spirit of our laws permits to be charged with any just demands against that decedent. Of these claims the corn-monwealth *and her officers have, and can have, no personal knowledge. Whether they were just in their origin, or have been paid, majr be, and in the nature of the thing, must usually be, unknown to them; and if paid, it may be out of their power to furnish the evidence, either oral or documentary, to establish the payment. The papers of the decedent do not fall into the hands of the escheator; and where he leaves no heirs and no personal estate, there is no one on whom the duty would devolve, of preserving the vouchers which might prove the satisfaction of a demand. Cases like this call most loudly for the protection of the statute against stale and antiquated claims; and if there be any instance, in which we are to make a practical application of the principle, that cases within the mischiefs of a statute, are to be regarded as embraced by its provisions, that instance is afforded here. The petition, indeed, is not one of the actions designated in the statute; but it is precisely analogous to the action of assumpsit upon a merchant’s account; and in the same spirit in which a court of equity regards the statute as running against a bill, though bills are not mentioned in the statute, a court of law ought to regard it as running against this petition ; which is, in effect, an action to recover the amount of an open account. The object of the statute was to limit stale demands of certain descriptions (accounts among others) whatever might be the nature of the suit instituted for their recovery.
It is said, indeed, that no one can plead the statute of limitations, but a party to the transaction, and cases under the bankrupt laws in England, have been cited to sustain the position. It is unimportant to examine those cases here. Nothing is better established, than that where an executor declines, as he may do in his discretion, to plead the statute, a creditor of the estate may, nevertheless, insist upon it before the master; Ex parte Dewdney, 15 Ves. 498. It would be strange indeed, if it were otherwise ; for when there is likely to be a deficiency of assets, those who are interested in them ought to be at liberty to protect them by *every legal defence. So here, the commonwealth, having liberallj' admitted demands upon the land, it is at least reasonable that those demands should be clearly established, and that she should be permitted, through her escheator, to protect the estate from unjust claims, by the same defences the decedent’s administrator would have had. Or, considering her *929 in the light of an heif or mortgagor, against whom a simple contract creditor seeks to marshal the assets, she would be entitled through her officer to the defence of the statute. So, if before this statute, the lands of a mortgagor had escheated to the commonwealth, and the mortgagee being paid out of the personalty, the simple contract creditors had sought to charge the land, there can, I think, be no doubt that the commonwealth, standing in the shoes of the mortgagor, would have a right to the defence of the statute of limitations. But the case here, is infinitely stronger. The commonwealth, through her officer, is here, in part, in a fiduciary character. By her law, notwithstanding the escheat and sale of the land, and the payment of the proceeds into the treasury, any person shewing title to the land may at any time within ten years assert his claim; and if it be established, shall be entitled to receive the net proceeds of the purchase money. The commonwealth, then, stands here as the representative of the estate. The defences of the estate, by her officer, are indeed, in the first instance, defences of her own right, but they may peradventure turn out to be defences of the rights of some unknown heir. She must, therefore, be looked on as to these defences, as defending for the heir, and as entitled to plead what an heir might rely on, who was resisting an attempt to charge his land with a simple contract debt, by a bill to marshal assets. I am therefore of opinion, that the plea of the statute of limitations was an available plea in this case, unless the appellees can bring themselves within the exceptions of the statute.
This is attempted by replying, that the account is an account between merchant and merchant concerning the trade *of merchandize; and the influence of this replication is resisted on two grounds (in the case of Eyle’s administrator). 1st, It is said, that cases of notes and bills are not within the exception. But this is not an action upon a bill or note; the bill was sold by Miller, and the full amount being credited, it must be presumed to have been paid. There is then no demand upon the bill. The demand is tor the excess of the account above the bill. 2ndly, It is said, this is an account stated or closed in 1806. But, though the dealings then ceased, the account is not for that reason an account stated. An account stated is where the accounts between the parties have been either actually settled, or are presumed to be so from the circumstance of a party’s retaining, for a long time, without objection, the account of the other party, which has been presented to him, shewing a balance against him. By the settlement (or implied admission which is considered equivalent) it has become an ascertained debt. All intricacy of account, or doubt as to which side the balance may fall, is at an end ; and thus the case is neither within the letter nor the spirit of the exception. 2 Wms. Saund. 127, d. e. note 7; Freeland v. Heron &c., 7 Cranch, 147. The cases have indeed been contradictory as to the question, whether open accounts are or are not barred (though they be between merchant and merchant) where the last item is above five years standing. Chancellor Kent is in favor of the bar in such cases; Carter v. Murray, 5 Johns. C. R. 522, and a like opinion is intimated in Jones v. Pengree, 6 Ves. 580; Duff v. East India Co., 15 Ves. 198; Barber v. Barber, 18 Ves. 286. Yet in Foster v. Hodgson, 19 Ves. 179, 185, the whole matter seems to be again unsettled in England. But in Mandeville v. Willson, 5 Cranch, 15, the supreme court was clearly of opinion, that it is not necessary that any of the items, in the case of merchant’s accounts, should come within the five years. This is, I think, the reasonable doctrine; for otherwise, there is no perceivable difference between merchants’, accounts and others; since, even between ‘common persons, if there be items within five years, the statute does not bar. See also Catling v. Skoulding, 6 T. R. 189, 192.
In Eyle’s case, then, I do not think the bar would apply strictly as such, if the replication were true. But what evidence is there in this case, that the account concerned the trade of merchandize between merchant and merchant? Absolutely none. There is no proof that the parties were merchants; and the account contains no charge of merchandize.'* In this case, then, the bar, I conceive, is complete.
Then, 2ndly, As to Robertson’s case. This, though less exposed to the objection of the staleness of the demand, is yet more fundamentally defective than the other. Its defects are in the proofs of the demand, and the nature of the claims. The proof of the demand is altogether defective, because it is certain that the whole account is not proved, and it is uncertain to what part, or to what amount, the proof extends. The witness swears, that the greater part of the items were charged by Scott, and that a small part was charged by Triplett; of the rest there is no proof. Can we divine what items were entered by these two clerks? Or can we ascertain, from this vague testimony, how much their charges will amount to in the aggregate? It is impossible. If so, then it may be that the very entries made by these witnesses may have been those which related to the bills and notes, and which may, therefore, probably be unprotected by the exception in the statute; or those which were made after the intestate’s death, which for other reasons may be objected to. And, moreover, as the aggregate amount of what was entered by those clerks is not proved, it is not perceived how the sum could be ascertained for which the judgment should have been entered. Accordingly, we find, the court, being unable to distinguish, gave a judgment for the whole account, whereas it is very “clear that the whole account was not proved. I am, therefore, of opinion, that in this case also the judgment is erroneous.
Believing it possible that something may be dne in Robertson’s case, I have reflected upon the practicability of sending the *930 cause back for further proceeding's. But as the case is at law and not in equity, I do not see how it can be done. The parties have put their rights upon this issue and this evidence; and they must abide it.
Judgments reversed in both cases, and petitions dismissed.

The statute provides, that “When any person shall die Indebted, seized of lands which shall become escheated to the commonwealth, not having personal property sufficient to pay such debts, the creditor may exhibit his petition before the court of the county or corporation, in which such escheat shall taire place, or in thesuperiour court of law for such county, malting the escheator of such county or corporation a party defendant, who shall defend such claim; and the said court shall proceed to judgment according to the right of the case, and render the same for such sum as shall appear to be ■due to such petitioner, if any thing; and it shall be the duty of such escheator, on such judgment being rendered, to satisfy and pay the amount thereof, if the proceeds of the sale be sufficient, and yet in Ills hands; and If the same shall be paid Into the treas-uiw, the auditor shall, and is hereby required, on a copy of such judgment, properly authenticated, being died, to Issue a warrant; and the treasurer shall pay the amount, or so much as has been received on account of such sale: Provided, That the slaves and other personal estate shall be previously applied in the payment of the debts of the said decedent, and that every such creditor shall annex an affidavit to the said petition, stating that the amount of his or her demand Is bona fide due and owing at the time of preferring the petition.” —Note in Original Edition.

Tile reporter states the cases, in this particular, as the president of the court seems to have understood them. As the reporter understands the records, each case (and especially Lyle’s) was submitted upon the evidence filed in both, so as to make the evidencéin each evidence in the other. —Note in Original Edition. I

There was one charge for goods sold ; note by reporter.

The principal case is cited in Anderson v. Com., 18 Gratt. 301.